**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL CALABRESE,** | ) | |
| **R02523,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 26-cv-633-DWD** |
| **ANTHONY WILLS,** | ) | |
| **MS. WOOLEY,** | ) | |
| **LT. WINE,** | ) | |
| **C/O PATTERSON,** | ) | |
| **SGT. JAMES,** | ) | |
| **C/O SCHLUETER,** | ) | |
| **JANE DOE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Michael Calabrese, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, Plaintiff alleges that the Defendants ignored his reports of threats to his safety. The Amended Complaint (Doc. 12)[1] is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-

[1] Plaintiff submitted a complaint received by the Court on May 11, 2026, and before the Court took any action on the pleading, Plaintiff submitted an amended complaint received on June 1, 2026. Under Federal Rule of Civil Procedure 15(a)(1), a litigant may amend his pleading once as a matter of course without leave of court. Accordingly, the Court construes Plaintiff's Amended Complaint as properly filed, and it is now treated as the operative pleading in this Order.

(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009).

## THE AMENDED COMPLAINT

Plaintiff's amended complaint has an introduction, an explanation of allegations associated with each defendant, a factual narrative, and enumerated counts. Many of the same core allegations are repeated several places in the amended complaint. For sake of clarity and brevity, the Court distills Plaintiff's allegations as follows:

On or around January 24, 2024, Plaintiff was assigned a new cellmate. (Doc. 1 at 21-22). The new cellmate was severely mentally ill, often paced the cell talking and yelling, and frequently threatened to harm himself or Plaintiff. (*Id.* at 22-23). Plaintiff alleges he spoke to many staff members about his fear that his cellmate would attack or kill him, but no one offered assistance. (*Id.* at 23). On several occasions the cellmate was removed to a crisis watch placement, and each time Plaintiff complained about the dangers posed by the cellmate, but staff simply returned the cellmate to the cell. (*Id.* at 23-24).

Plaintiff alleges he wrote numerous letters to Defendant Anthony Wills, the warden, seeking relief from this cell placement. (*Id.* at 24). He alleges he also wrote letters to the Governor's office, and that Wills acknowledged receipt of those letters but did not assist him. (*Id.* at 24-25). Plaintiff alleges that at times when he complained about his

cellmate, he noticed that the freshwater to the cell would be shut off for two or more days at a time. He alleges that when water was restored Defendants James, Patterson, Schlueter would walk by and ask him if he learned his lesson yet. (*Id.* at 25-26). He further alleges that he observed Patterson and/or Schlueter destroy his grievances on at least three occasions. (*Id.* at 26). Plaintiff claims he spoke to Defendant Wooley, and non-party officers Carin, Lyons, Martinez, Presswood, Edgers, and many others about his fear, and that he wrote the mental health department several times. (*Id.* at 26-27).

The problem culminated on September 25, 2024, when Plaintiff's cellmate brutally attacked him in the middle of the night when Plaintiff woke to urinate. (*Id.* at 27). Plaintiff alleges his cellmate struck him with a closed fist and with a heavy footlocker, knocking him unconscious. (*Id.* at 27-28). Plaintiff alleges that when he came to his cellmate was asleep, so he made his way to the front of the cell to seek assistance. (*Id.*). He alleges that other inmates called for help, and about two hours later Defendant Patterson came to his cell but offered no assistance. (*Id.*). Plaintiff claims that Defendants Schlueter, Wine, and James also came by his cell, saw his injuries, and refused assistance. (*Id.*).

Plaintiff claims that at some point Defendant Schlueter enticed another attack from his cellmate, allowing Schleuter to use excessive force to stop the conflict. (*Id.* at 29). Plaintiff alleges that Schlueter sprayed him with mace while he was on the floor being kicked and punched by his cellmate, and Schlueter applied handcuffs tighter than necessary, causing severe pain. (*Id.*). Plaintiff claims he sustained the following injuries: a detached retina in his right eye, a concussion, a busted eye and lips, back and neck pain,

severe shoulder and leg pain, pain while walking and standing, daily headaches and ringing in his ears, hearing loss in both ears, permanent vision loss in his right eye, emotional pain and suffering, and PTSD. (*Id.* at 29-30). Plaintiff alleges did not receive medical attention until almost 60 days after the attack, and he still has untreated medical issues related to the attack. (*Id.* at 29-31).

Plaintiff theorizes that the Defendants' actions are retaliatory. (*Id.* at 30-31). At the beginning of the complaint, he also alleged that Defendants refused to assist or protect him because he "was labeled a weapons violator and threat to staff at the Menard Correctional Center." (*Id.* at 6). Plaintiff alleges in the information about the Defendants that some of them mentioned his status as a weapons violator. Specifically, he claims he asked Defendant Wooley to help separate him from his cellmate on July 22, 2024, and she indicated she would not do so because Plaintiff was a weapons violator. (*Id.* at 12-13). Plaintiff alleges Defendant Wine ignored several letters about threats to Plaintiff, and on the day of the attack he refused to assist and instructed staff not to remove Plaintiff from the situation because he was a weapons violator. (*Id.* at 13-14). Likewise, Plaintiff alleges he notified Defendant James of his safety concerns for several months, but James refused assistance and would not help even when he saw Plaintiff's injuries from the initial attack. (*Id.* at 16-17). Plaintiff alleges he asked Defendant Schlueter to be moved several times a week for months leading up to the attack, but Schlueter refused aid. (*Id.* at 17-19). As for Patterson, Plaintiff alleges Patterson was informed several times in the week leading up to the fight of the imminent threats, and Patterson did not remove him from the cell or offer medical attention. (*Id.* at 15-16). Finally, as to "Jane Roe," Plaintiff alleges she saw

him in the healthcare unit the day of the attack, asked him if he learned his lesson, and joked with other officers about how she would not offer any care for Plaintiff's injuries. (*Id.* at 20-21).

Plaintiff designed his own enumerated claims, and the Court adopts Plaintiff's claims as follows:

**Claim 1:** **Eighth Amendment failure to protect claim against Defendants Wills, Wooley, Wine, Patterson, James and Schlueter for failing to act on Plaintiff's requests for separation from his cellmate prior to the September 25, 2024, attack;**

**Claim 2:** **Eighth Amendment excessive force claim against Defendant Schlueter for the allegedly excessive use of mace and handcuffs on September 25, 2024;**

**Claim 3:** **Eighth Amendment cruel and unusual punishment claim against Defendants Wills, Wooley, Wine, and James for allowing Plaintiff to be housed with a severely mentally ill inmate;**

**Claim 4:** **First Amendment retaliation claim against Defendants Wills, Wooley, Wine, James, Patterson and Schlueter for turning off Plaintiff's cell water in response to grievances;**

**Claim 5:** **Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Patterson, Schlueter, Wine, James, and Nurse Jane Roe for refusing medical care for Plaintiff's injuries on September 25, 2024;**

**Claim 6:** **First/Eighth Amendment claim against Nurse Jane Roe for refusing medical care because she refused to help inmates who complained about staff;**

**Claim 7:** **Illinois state law medical malpractice claim against Nurse Jane Roe.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

Plaintiffs allegations in Claims 1-7 may proceed as pled at this preliminary juncture. He has plausibly suggested that he made many attempts to alert defendants to the safety risk posed by his mentally ill cellmate, all to no avail. He alleges that on some occasions, after making a request for assistance the water to his cell would be disabled, and when it was turned back on a defendant would make a passing comment to him suggesting improper animus behind the water issue. He further alleges that on the day of the attack, assistance was refused after the first attack, a second attack occurred, and no medical attention was provided for visible injuries. Plaintiff claims that he still suffers from untreated injuries, including vision and hearing damage.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel wherein he indicates that he has a G.E.D. and limited comprehension skills after his head injury. (Doc. 11 at 2, 4). The writer of the motion attests that he or she is a jailhouse lawyer who has prepared the motion and complaint for Plaintiff because he is unable to grasp even basic concepts on his own. (*Id.* at 3-4). When confronted with a request under § 1915(e)(1) for recruited

counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). Plaintiff contends he is wasting stamps contacting attorneys who do not respond, and he provided a list of five firms he alleges he has attempted to contact, to no avail. If Plaintiff has sent correspondence but has not received a response, he should submit proof that he purchased postage to transmit these letters.

Additionally, the Court must consider the complexity of the case and Plaintiff's ability to manage the litigation on his own. The need of significant assistance from a jailhouse lawyer is a factor that can weigh in favor of recruiting counsel. *See e.g., Eagan*, 987 F.3d at 682 (The court must examine specifically the plaintiff's ability to litigate the case, as opposed to the ability of any "jailhouse lawyer" assisting the plaintiff."). Additionally, the Court must consider the stage of the litigation, the legal and factual complexity of the claims, and Plaintiff's ability to proceed on his own. *See Thomas v. Wardell*, 951 F.3d 854, 860 (7th Cir. 2020). Here, Plaintiff's case is proceeding beyond initial review and the next steps will be closely guided by orders and actions of the court and the opposing parties. For example, the Court will initiate service, Plaintiff will be

guided through steps to identify Jane Roe, and a detailed scheduling order will guide the parties through the initial exchange of discovery. These steps are generally manageable, even for those who do not have formal legal training. Though Plaintiff's purported jailhouse lawyer expresses concern about Plaintiff's level of comprehension, the Court is not persuaded yet that comprehension or education level would prevent Plaintiff from accomplishing the next steps in this case. At this early juncture, the Court finds that Plaintiff is capable of proceeding. The Motion may be renewed later with further evidence of Plaintiff's efforts to seek counsel and with a more specific explanation of what is making the case too complex for Plaintiff to manage.

## DISPOSITION

**IT IS HEREBY ORDERED THAT** Plaintiff's Motion for Status (Doc. 13) is **GRANTED** by the issuance of this Order. **Claims 1-7** may proceed as enumerated above against the named defendants.

The Clerk of Court shall **ADD** the Warden of Menard to this lawsuit in official capacity to assist with identifying Defendant Nurse "Jane Roe." **Plaintiff shall have 21 days to file a notice** with descriptive information about Jane Roe such as height, appearance, or any nicknames he may know for this individual. If Plaintiff fails to file a timely notice, the claims against Jane Roe may be dismissed for failure to prosecute.

The Clerk of Court is **DIRECTED** to prepare for Defendants Anthony Wills, Ms. Wooley, Lt. Wine, C/O Patterson, Sgt. James, C/O Schlueter, and the Warden of Menard (official capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to

mail these forms, a copy of the Amended Complaint (Doc. 12), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Recruitment of Counsel (Doc. 11) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

**DATED: August 17, 2026**

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.08.17 10:14:58 -05'00'

DAVID W. DUGAN
United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.